IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
WESTERN DIVISION (SPRINGFIELD)

| | |
|---|---|
| **JESSICA LAVALLEY,** <br><br> **Plaintiff,** <br><br> -v- <br><br> **NATROL, LLC,** <br><br> **Defendant.** | Civil Case Number: <br><br> **CLASS ACTION COMPLAINT** <br> AND <br> **JURY DEMAND** |

Plaintiff, JESSICA LAVALLEY (hereinafter, "Plaintiff"), a Massachusetts resident, brings this Class Action Complaint by and through the undersigned attorneys against Defendant NATROL, LLC (hereinafter, "Defendant"), individually and on behalf of a class of all others similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure, based upon information and belief of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## INTRODUCTION/PRELIMINARY STATEMENT

1. Plaintiff brings this action on behalf of herself and all others similarly situated to obtain monetary and other appropriate relief for herself and members of the Class (defined below) as a result of the unlawful acts of defendant Natrol, Inc. ("Defendant" or "Natrol").

2. Natrol manufactures and distributes various health products, including vitamins, minerals, and supplements as well as numerous lines of health and wellness products.

3. Plaintiff purchased a bottle of Natrol Liquid Melatonin that was manufactured by Natrol at one of their two facilities in Chatsworth, California.

4. The prominent label on the front of the bottles of Natrol Liquid Melatonin boldly represented that it was "100% Drug-Free." Contrary to the representations in large print on the front of the bottle, however, the product stated on the back that it contained ethyl alcohol and therefore was not "100% Drug-Free."

5. Specifically, Natrol Liquid Melatonin is made from 10% ethyl alcohol, which is a clear, colorless liquid used as the principal ingredient in alcoholic beverages, such as beer, wine, and brandy.

6. Defendant had thus been misrepresenting Natrol Liquid Melatonin and deceiving its customers, including Plaintiff and numerous other consumers. Defendant has injured Plaintiff and other consumers in Massachusetts by inducing them to purchase and consume products with alcohol on the false premise that such products are "100% Drug-Free." The "Drug-Free" label was especially injurious to the Plaintiff as she is a recovering alcoholic and abstains from all alcohol, no matter the percentage.

7. Defendant's conduct constitutes unfair and deceptive acts and practices in the conduct of trade and commerce and violates Massachusetts General Laws Chapter 93A.  Accordingly, Plaintiff seeks, on behalf of herself and other Massachusetts consumers, to recover damages, including statutory and multiple damages, interest, attorneys' fees, costs, and any and  all other relief permitted by law.

**PARTIES**

8. Plaintiff Jessica Lavalley is a resident of Pittsfield, Massachusetts.

9. Defendant Natrol is a California corporation with its principal place of business in Chatsworth, California.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Class consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

11. Venue is properly placed in this district as the Plaintiff was harmed in this District by her purchase and consumption of the Defendant's products in this District.

**FACTUAL ALLEGATIONS**

Natrol Liquid Melatonin

12. Natrol manufactures and distributes various health products, including vitamins, minerals, and supplements as well as numerous lines of health and wellness products throughout the United States, including through pharmacies in Massachusetts such as Walgreens, CVS, and GNC stores.

13. At all relevant times, all bottles of Natrol Liquid Melatonin stated prominently in large print on the front of the label, as well as on the back of the label, that they were "100% Drug-Free." There was no qualification on bottles of Natrol Liquid Melatonin to the claim that Natrol Liquid Melatonin is "100% Drug-Free," and there was no indication on the front of the bottles that Natrol Liquid Melatonin contains any alcohol. A picture of one of the bottles purchased by Plaintiff is on the following page.



14. Natrol systematically labeled and marketed every bottle of Natrol Liquid Melatonin as "100% Drug-Free" in product packaging, print advertisements, in television commercials, and on the Natrol website ([www.natrol.com](www.natrol.com)). That is, the "100% Drug-Free" labeling was part of a broad, pervasive marketing scheme that is directed to all consumers, without limitation as to geography or the location of the advertisement or sale of Natrol Liquid Melatonin.

15. The claim that Natrol's Liquid Melatonin was 100% Drug-Free was important and material to the Plaintiff, who is a recovering alcoholic and does not ingest any products containing drugs or alcohol.

The Importance to Consumers of "Drug-Free" Labels

16. Whether products such as Natrol Melatonin are in fact "100% Drug-Free," and whether such products contain alcohol or drugs, is important to reasonable consumers.

17. In recent years, consumers have shown a significant and increasing interest in "drug-free" products, spawning entire sub industries of "drug-free" products in a range of consumer goods, including food, health care, and personal care items. Consumers place a greater value on "drug-free" products based on perceptions that "drug-free" products are safer, healthier, more natural or otherwise of a higher quality compared to similar products that contain ingredients that are not drug-free".

18. The trend towards "drug-free" products has manifested itself most significantly in the health, wellness and supplements industry.  Pharmacies and health food store shelves are now stocked with "drug-free" remedies and offer many alternatives to a range of drug-containing substances.

19. The importance to a reasonable consumer of a claim that a product such as Liquid Melatonin is "100% Drug-Free" is demonstrated, inter alia, by Defendant's decision to label, market, emphasize, and sell Liquid Melatonin as "100% Drug-Free," among the various other characteristics of the product that Defendant could have advertised on the label. That is, Defendant's selection of "100% Drug-Free" to be one of the few descriptive phrases on the front label indicates Defendant's understanding that such a descriptor is material to a typical, reasonable consumer.

20. Ethyl alcohol is commonly referred to as simply 'alcohol'.  And 'alcohol' is clearly a drug – one of the most commonly used and abused drugs across the globe.  Ethyl alcohol is a

psychoactive drug that is the active ingredient in drinks such as beer, wine, and distilled spirits.[1]

21. In light of the inescapable fact that alcohol is plainly a drug, a reasonable consumer would understand the phrase "100% Drug-Free" to indicate that the product was free of all drugs, including alcohol.

22. The prominent labeling on the front of Natrol Liquid Melatonin bottles representing the products are "100% Drug-Free" was therefore false and misleading.

<u>Plaintiff's Purchases of Natrol Liquid Melatonin</u>

23. Plaintiff purchased one bottle of Natrol Liquid Melatonin from a Walgreens location at 163 South Street, Pittsfield, Massachusetts.

24. Specifically, the Plaintiff is in recovery from alcohol and was interested in a product to help herself fall asleep at night.

25. While at Walgreens, Plaintiff purchased one bottle of Natrol Liquid Melatonin in early June 2021 and proceeded to take it every night for several weeks, until June 21, 2021.

26. On June 22, 2021, the Plaintiff realized that the product wasn't drug-free while talking to her friend about feeling hungover, groggy, depressed and lethargic.

27. At the time of her purchase in the store, Plaintiff read the front label of the bottle and believed that Natrol Liquid Melatonin was in fact 100% Drug-Free, meaning that it contained no drugs, including alcohol.

---

[1] Collins SE, Kirouac M (2013). "Alcohol Consumption". Encyclopedia of Behavioral Medicine: 61–65. doi:10.1007/978-1-4419-1005-9_626. ISBN 978-1-4419-1004-2.

28. After using Natrol Liquid Melatonin, Plaintiff learned that, contrary to the representations in large print on the front of the bottle, the product contained drugs ethyl alcohol—and was therefore not "100% Drug-Free."

29. After Plaintiff learned that Natrol Liquid Melatonin is not really "100% Drug-Free" because it contained ethyl alcohol, she never again purchased Natrol Liquid Melatonin.

<u>Plaintiff and Other Consumers Suffered Injury and Damages Due to Defendant's False Representations Concerning the Contents of Natrol Liquid Melatonin</u>

30. Plaintiff and other consumers have been injured, economically and otherwise, by the misrepresentations that the Natrol Liquid Melatonin she purchased was 100% Drug-Free, including because she paid for, but did not receive, a product that was actually 100% Drug-Free, and because Plaintiff would not have purchased Natrol Liquid Melatonin had she known it contained ethyl alcohol and was not 100% Drug-Free.

31. Defendant's prominent use of the false label "Drug-Free" on Natrol Liquid Melatonin also caused Defendant to sell a greater volume of Natrol Liquid Melatonin than it otherwise would have sold without the false label, enabling Defendant to extract additional profits from duped customers and to obtain a greater market share in Liquid Melatonin than they would have obtained absent deception.

## CLASS ACTION ALLEGATIONS

32. Plaintiff realleges and incorporates the allegations contained in the paragraphs above.

33. Plaintiff brings this action pursuant to FRCP 23 and Chapter 93A, Section 9(2) on behalf of herself and a Class consisting of:

    All persons who have purchased Natrol Liquid Melatonin products in Massachusetts that were labeled "100% Drug-Free."

34. Plaintiff reserves the right to amend the definition of the Class.

35. This action is properly maintainable as a class action.

36. The members of the Class are sufficiently numerous that joining all members is impractical.

37. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. Whether Natrol Liquid Melatonin products were sold with the label "100% Drug-Free";

    b. Whether the products so labeled in fact were 100% Drug-Free;

    c. Whether, how, and when Defendant disclosed that Natrol Liquid Melatonin contained ethyl alcohol;

    d. Whether Defendant's conduct alleged herein constituted unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Chapter 93A, Section 2; and

    e. The proper measure of damages.

38. Plaintiff's claims are typical of the claims of the members of the Class because, like Plaintiff, each Class member purchased Natrol Liquid Melatonin products that were mislabeled as alleged herein.

39. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel who have extensive experience prosecuting consumer class actions and who, with Plaintiff, are fully capable of, and intent upon, vigorously pursuing this action. Plaintiff does not have any interest adverse to the Class.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Furthermore, the damage that has been suffered by any individual Class member is likely not substantial, and the expense and burden of individual litigation would make it impracticable for all members of the Class to redress the wrongs done to them individually. There will be no difficulty in the management of this action as a class action.

41. 52. The prosecution of separate actions against Defendant would create a risk of inconsistent or varying adjudications with respect to the individual Class members which could establish incompatible standards of conduct for Defendant. In addition, adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of the interests of the other members of the Class not parties to such adjudications or could substantially impede or impair their ability to protect their interests.

42. The members of the Class are readily identifiable through Defendant's records and other records, and Plaintiff is a member of the Class.

43. Defendant has acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**COUNT I**
(Violation of Chapter 93A)

44. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

45. At all relevant times, Defendant was engaged in trade or commerce within the Commonwealth of Massachusetts, including the trade or commerce of selling, or causing

to be sold, the Natrol Liquid Melatonin products at issue within the Commonwealth of Massachusetts.

46. By conducting the unfair and deceptive branding efforts described above, Defendant has engaged in unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Chapter 93A, Section 2.

47. In addition, and as an additional basis for liability under Chapter 93A, by engaging in the conduct described above, Defendant violated at least the following General Regulations of the Massachusetts Attorney General:

    a. 940 C.M.R. 3.02(2), which states:

    No statement or illustration shall be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised product to another.

    b. 940 C.M.R. 3.05(1), which states:

    No claim or representation shall be made by any means concerning a product which directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect. This prohibition includes, but is not limited to, representations or claims relating to the construction, durability, reliability, manner or time of performance, safety, strength, condition, or life expectancy of such product, or financing relating to such product, or the utility of such product or any part thereof, or the ease with which such product may be operated, repaired, or maintained or the benefit to be derived from the use thereof.

    c. 940 C.M.R. 3.16(1)-(2), which make any act or practice a violation of Chapter 93A, Section 2 (and thus Section 9) if:

        1. It is oppressive or otherwise unconscionable in any respect; or

        2. Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may

    have influenced the buyer or prospective buyer not to enter into the

    transaction . . . .

  d. 940 C.M.R. 6.03(2), which states:

  Sellers shall not use advertisements which are untrue, misleading, deceptive, fraudulent, falsely disparaging of competitors, or insincere offers to sell.[2]

  e. 940 C.M.R. 6.04(1)-(2), which states:

    1. Misleading Representations. It is an unfair or deceptive act for a seller to make any material representation of fact in an advertisement if the seller knows or should know that the material representation is false or misleading or has the tendency or capacity to be misleading, or if the seller does not have sufficient information upon which a reasonable belief in the truth of the material representation could be based.

    2. Disclosure of Material Representations. It is an unfair or deceptive act for a seller to fail to clearly and conspicuously disclose in any advertisement any material representation, the omission of which would have the tendency or capacity to mislead reasonable buyers or prospective buyers . . . .

48. Defendant's violations of the regulations enumerated above constitute additional violations of Chapter 93A, Section 2(a) because regulations promulgated by the Massachusetts Attorney General under Chapter 93A, Section 2(c) provide that any act or practice violates Chapter 93A, Section 2 if "[i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection . . . ." 940 C.M.R. 3.16(3).

---

[2] "An unfair or deceptive representation may result not only from direct representations and the reasonable inferences they create, but from the seller's omitting or obscuring a material fact." 940 C.M.R. 6.03(4).

49. The violations of Chapter 93A by Defendant as described herein were done willfully, knowingly, and in bad faith.

50. As a direct and proximate result of Defendant's conduct, Plaintiff and the members of the Class were harmed when they paid for and received a product (Liquid Melatonin with ethyl alcohol) which was deceptive and different than the product promised to them (a "100% Drug-Free" Liquid Melatonin).

51. Under Chapter 93A (M.G.L. c. 39A § 9), no pre-suit demand is required when either the respondent maintains no place of business or keeps no assets in the Commonwealth.

52. As a result of Defendant's violation of Chapter 93A, Defendant is liable to Plaintiff and the Class for up to three times the damages that Plaintiff and the Class incurred, or at the very least the statutory minimum award of $25 per purchase of a Natrol Liquid Melatonin product as alleged herein, together with all related court costs, attorneys' fees, and interest.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiff prays for relief in the form of an order as follows:

a. Allowing this action to proceed as a class action under FRCP 23 and Chapter 93A, Section 9(2);

b. Awarding Plaintiff and members of the Class monetary damages;

c. Awarding Plaintiff and members of the Class up to three times their damages, or in the alternative statutory damages, together with interest and costs;

d. Awarding counsel for the Plaintiff and the Class their reasonable attorneys' fees and expenses;

e. Awarding such other and further relief which the Court finds just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 7, 2021

By: /s/ Kevin Crick
Kevin Crick, Esq.
BBO:  680950
Rights Protection Law Group, PLLC
100 Cambridge St., Suite 1400
Boston, MA 02114
Phone: (617) 340-9225
Fax: (888) 622-3715
k.crick@rightsprotect.com
*Attorney for Plaintiff*

Yitzchak Zelman, Esq.
*Pro Hac Vice to be filed*
MARCUS ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone: (732) 695-3282
Facsimile: (732) 298-6256
Email: yzelman@marcuszelman.com
*Attorneys for Plaintiff*